1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE M. CELESTE, individually and as Special Administrator for the Estate of Frederick Celeste<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MERCK, SHARP & Dohme CORP., *et al.*,<br><br><br>　　　　　Defendants. | Case No. 14cv360 AJB (MDD)<br><br>ORDER:<br><br>(1) GRANTING MOTION TO SUPPLEMENT, (Doc. No. 65);<br><br>(2) GRANTING MOTION TO REMAND, (Doc. No. 39); and<br><br>(3) DENYING MOTIONS TO DISMISS AS MOOT, (Doc. Nos. 47; 50). |

Presently before the Court is Plaintiff Danitta Rinder's ("Plaintiff") motion to remand, (Doc. No. 39), and Defendants Wolters Kluwer United States, Inc. ("WKUS") and Wolters Kluwer Health, Inc. ("WK Health") (collectively, WK Defendants") separately filed motions to dismiss, (Doc. Nos. 47, 50). Defendants H.D Smith Whole-sale Drug Co. ("HD Smith") and Smith Medical Partners LLC ("Smith Medical") (collectively, "Smith Defendants") filed an opposition to Plaintiff's motion to remand on March 19, 2014, (Doc. No. 46), which was followed by Defendant Merck Sharp & Dohme Corp.'s ("Merck") opposition on March 19, 2014, (Doc. No. 53). Defendants WKUS and WK Health filed a notice of joinder in Merck's opposition to the motion to remand on March 19, 2014. (Doc. Nos. 51, 52.)

1

The Court heard oral arguments on the motion to remand on June 13, 2014.  After consideration of the parties arguments in support and opposition of the motion, the Court GRANTS Plaintiff's motion to remand for the following reasons.

## I.    BACKGROUND

On March 29, 2013, three separate plaintiffs from three different states (Massachusetts, Illinois, and New Jersey) commenced this products liability action in Illinois state court against Merck, WKUS, WK Health, HD Smith, and Smith Medical.  (Doc. No. 6, Ex. 2 at 1-2.)  On May 3, 2013, Merck removed the action to the Northern District of Illinois, arguing that the named plaintiffs and the Illinois Defendants (WKUS, HD Smith, and Smith Medical) had been fraudulently joined.  (Doc. No. 4, Ex. 18.)  On May 8, 2013, the district court remanded the action for a determination of whether the plaintiffs had been fraudulently joined, but did not rule on the potential misjoinder of Defendants.  (*Id*., Ex. 19 at 7:14-16.)  Following remand, Merck moved to sever the plaintiffs' misjoined claims.  On January 30, 2013, the state court granted Merck's motion to sever and dismissed the non-Illinois plaintiffs on the basis of *forum non convenies*, leaving Danitta Rinder, as special administrator for the estate of Gregg Rinder ("Decedent"), the sole named Plaintiff in the instant action.  (*Id*., Ex. 2.)  On January 31, 2014, Merck filed a notice of removal.[1]  (Doc. No. 1.)  The case was thereafter transferred to this Court pursuant to the JPML transfer order on February 13, 2014.  (Doc. No. 29.)

The First Amended Complaint ("FAC") alleges the following causes of action: (1) strict liability-failure to warn; (2) strict liability-design defect; (3) negligence; (4) breach of implied warranty of merchantability; (5) breach of express warranty; (6) wrongful death; and (7) survival.  (Doc. No. 6, Ex. 1.)  Merck and the Smith Defendants are named in all counts, and the WK Defendants are named in counts three (negligence), six

---

[1] Merck's notice of removal argued that HD Smith, Smith Medical, and WKUS had been fraudulently joined based on: (1) the learned intermediary doctrine; (2) preemption under 21 U.S.C. §§ 301 *et seq*.; (3) the Illinois distributor statute; and (4) unrebutted evidence that the Illinois Defendants did not provide Januvia or any related materials to the Decedents pharmacy.  (Doc. No. 4 at ¶ 28.)

(wrongful death), and seven (survival).  (*Id*.)  The FAC alleges that Steven Eienstein M.D., of North Shore Medical Group in Northbrook, Illinois, prescribed Januvia to Decedent between May 19, 2008 and January 19, 2010.  (*Id*. at ¶ 4.)  During this time, Decedent's prescription was filled at a Jewel Osco pharmacy in Palestine, Illinois.  (Doc. No. 6-3 at 2.)  Decedent was diagnosed with pancreatic cancer on or about March 28, 2010, and succumbed to the disease on May 21, 2010.  (Doc. No. 6, Ex. 1 ¶ 6.)

The citizenship of the parties is undisputed.  Both Plaintiff and Decedent resided in Illinois at all relevant times; Merck is a New Jersey corporation with its principal place of business in New Jersey; HD Smith is a Delaware corporation with its principal place of business in Illinois; Smith Medical is a Delaware limited liability company with its principal place of business in Illinois; WK Health is a Delaware corporation with its principal place of business in Pennsylvania; and WKUS is a New York corporation with its principal place of business in Illinois.  (Doc. No. 4, Ex. 1 at ¶¶ 3, 14, 22, 108; Doc. No. 4, Exs. 20, 21, 22.)

With regard to each Defendant, Plaintiff alleges that Merck manufactured Januvia, that HD Smith and its wholly owned subsidiary Smith Medical distributed the Januvia ingested by Decedent (or within the chain of distribution), and that WK Health and WKUS created, published, and distributed patient education monographs ("PEMs") regarding Januvia to Decedent's pharmacy, in addition to providing information regarding Januvia to Decedent's physicians.[2]  (*Id*. at ¶¶ 14, 18, 21, 22, 24; Doc. No. 39 at 6.)  Plaintiff further alleges that HD Smith markets Januvia through publication of a monthly magazine known as HealthWise Magazine, and that this publication enables HD Smith's manufacturing partners to place product and wellness information into the hands of consumers.  (Doc. No. 4, Ex. 1 at ¶ 20.)

Plaintiff now seeks to remand the case to Illinois State Court on the basis that Decedent and Defendants WKUS, HD Smith, and Smith Medical (collectively, the

---

[2] PEMs are inserts that a pharmacist provides to a patient with a description that provides information about the prescribed medicine in a patient-friendly manner.  (Doc. No. 53 at 5:5-7.)

"Illinois Defendants") are each Illinois citizens, therefore destroying diversity jurisdiction - the only basis for subject matter jurisdiction in the case. Plaintiff also contends the case must be remanded because Defendants' removal was procedurally defective in that it violated the forum defendant rule and the voluntary-involuntary rule.

## II.   LEGAL STANDARD

### A.   Motion to Remand

The right to remove a case to federal court is entirely a creature of statute. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove an action when a case originally filed in state court presents a federal question, or is between citizens of different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C. §§ 1441(a) and (b); 28 U.S.C. §§ 1331, 1332(a).

"[J]urisdiction in a diversity case is determined at the time of removal," *Am. Dental Indus., Inc. v. EAX Worldwide, Inc.*, 228 F. Supp. 2d 1155, 1157 (D. Or. 2002), and only state court actions that could originally have been filed in federal court can be removed, 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction . . . Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction")

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman–Bachrach & Assocs.*, 903

1 F.2d 709, 712 n.3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195

2 (9th Cir. 1988)).

3 **B.   Applicable Law and Fraudulent Joinder**

4      In a MDL action such as this, the transferee court applies the law of the transferor

5 court to determine if a defendant has been fraudulently joined.  *See Betts v. Eli Lilly &*

6 *Co.*, 435 F. Supp. 2d 1180, 1184 (S.D. Ala. 2006) (stating that "whether a resident

7 defendant is fraudulently joined depends on the plaintiff's ability to establish a cause of

8 action under state law, in this case the law of Alabama [transferor court]).  Under Illinois

9 law—the law of the transferor court—a defendant is fraudulently joined when "there is

10 no possibility that a plaintiff can state a cause of action against [the] nondiverse defen-

11 dant[] in state court, or where there has been outright fraud in plaintiff's pleading of

12 jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).  A

13 defendant seeking removal based on fraudulent joinder bears the "heavy" burden of

14 proving that, after the court resolves all issues of law and fact in the plaintiff's favor,

15 there is no possibility the plaintiff can establish a cause of action against the diver-

16 sity-defeating defendant in state court.  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th

17 Cir. 1992); *see also Bavone v. Eli Lilly & Co.*, No. 06–153–GPM, 2006 WL 1096280, at

18 *2 (S.D. Ill. Apr. 25, 2006); *Durham v. Shiley Inc.*, No. 91 C 7999, 1994 WL 583351, at

19 *2–3 (N.D. Ill. Oct. 21, 1994).

20      To determine whether a non-diverse defendant has been fraudulently joined, the

21 court has limited power to resolve disputed issues of fact.  However, in cases where a

22 "plaintiff has stated a claim but misstated or omitted discrete facts, the district court may

23 . . . pierce the pleadings and conduct a summary inquiry as to the issue of fraudulent

24 joinder." *Hill v. Olin Corp.*, No. 07–CV–0054–DRH, 2007 WL 1431865, at *4 (S.D. Ill.

25 May 14, 2007) (internal quotations omitted).  Nonetheless, piercing the pleadings is "a

26 strictly circumscribed inquiry limited to uncontroverted summary evidence which

27 establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to

28 a plaintiff under applicable state law." *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842,

848 (S.D. Ill. 2006); *see also Faucett v. Ingersoll–Rand Mining & Mach. Co.*, 960 F.2d 653, 654–55 (7th Cir.1992) (stating that in a products liability action, fraudulent joinder was established by a diversity-defeating defendant's uncontradicted affidavit stating that he had nothing to do with the machine that caused the plaintiff's injury).

## III.   DISCUSSION

Based on the framework set forth above, the Court considers whether WKUS, HD Smith, and Smith Medical were fraudulently joined to defeat diversity jurisdiction, or whether there is a possibility that Plaintiff can state a claim against any of the Illinois Defendants.

## A.   Defendant WKUS and WK Health

Defendants argue Plaintiff's claims against WKUS fail because there is absolutely no basis to pierce the corporate veil between WK Health and WKUS, and even if there were, uncontroverted evidence shows that Decedent never received a PEM from WK Health.[3]  (Notice of Removal, Ex. 26 ¶¶ 8, 11.) ("For the time period of October 1, 2006 through January 1, 2013, WKH did not license its PDED database to any of Plaintiffs' retail pharmacies for distribution to individual patients who filled prescriptions at those pharmacies.").[4]  Defendants also contend that to the extent Plaintiff seeks to hold WK Health, and therefore WKUS, liable on the basis that WK Health voluntarily undertook to provide up-to-date and comprehensive drug information to Decedent's physicians, these allegations must be disregarded because they were not alleged in the FAC.

The Court disagrees on both counts. "Under Illinois law, a corporation is a legal entity separate and distinct from . . . other corporations with which it may be affiliated." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985); *see also*

---

[3] The only causes of action alleged against WKUS in the First Amended Complaint are negligence, wrongful death, and survival.  Defendants contend that Wolters Kluwer United States Inc. and Wolters Kluwer Health, Inc. are separate corporate entities that are wholly owned subsidiaries of Wolters Kluwer U.S. Corporation, a non-operating Delaware holding company.  (Notice of Removal, Doc. No. 8, Ex. 22 ¶¶ 3, 4.)   Both WK Health and WKUS filed a notice of joinder in Merck's opposition to Plaintiff's motion to remand.  (Doc. Nos. 51, 52.)

[4] Plaintiff concedes that neither WK Health nor WKUS provided information about Januvia to Decedent's pharmacies, and therefore withdraws these allegations.  (Doc. No. 59 at 4:22-5:2.)

14cv360 AJB (MDD)

*Polites v. U.S Bank Nat'l Ass'n*, 836 N.E.2d 133, 137 (Ill. Ct. App. 2005)("In Illinois, corporations are treated as separate legal entities even where one wholly owns the other and the two have mutual dealings.")  In certain circumstances, however, "courts will disregard the corporate form to impose liability on . . . affiliated corporations if there is 'such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist,' and 'circumstances [are] such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.' " *Asperger v. Shop Vac Corp.*, 524 F. Supp. 2d 1088, 1094 (S.D. Ill. 2007) (citing *Van Dorn Co.*, 753 F.2d at 569–70)); *see also Walker v. Dominick's Finer Foods, Inc.*, 415 N.E.2d 1213, 1217 (Ill. Ct. App. 1980) (stating that piercing the corporate veil is an equitable remedy that Illinois courts "undertake[] reluctantly"). Although courts usually pierce the corporate veil between the parent corporation and its subsidiary, courts may also pierce the corporate veil between two affiliated, or "sister," corporations.  *Bank of Chicago v. Baker*, 427 N.E.2d 94, 101 (1981) ("However the doctrine of piercing the corporate veil is not limited to the parent and subsidiary relation-ship; the separate corporate identities of corporations owned by the same parent will likewise be disregarded in an appropriate case.").

In determining whether a corporate defendant has been fraudulently joined, where liability is premised on an agency or alter ego theory, Illinois courts have not required the plaintiff to "plead facts to establish grounds for piercing the corporate veil." *Asperger*, 524 F. Supp. 2d at 1094 ("Although Shop Vac has submitted evidence regarding the separate corporate identity of Sears and K–Mart in this case, the mere fact of separate corporate identity, in and of itself, is not sufficient to establish fraudulent joinder to defeat diversity.").  Allegations that one entity is a wholly-owned subsidiary of the other or that the two entities share the same corporate officers/shareholders have

been found sufficient.⁵  *See, e.g., Brown v. SBC Communications, Inc.*, No. 05–CV–777–JPG, 2007 WL 684133, at *9–10 (S.D. Ill. Mar. 1, 2007); *Ishkhanian v. Forrester Clinic S.C.*, No. 02 C 9339, 2003 WL 21479072, at *3 (N.D .Ill. June 25, 2003) ("[I]n order for the claim to withstand a motion to dismiss for failure to state a claim in federal court, no . . . substantial showing . . . of fact [regarding the propriety of piercing the corporate veil] is demanded."); *Steel Warehouse of Wis., Inc. v. Caterpillar, Inc.*, No. 90 C 20053, 1990 WL 304266, at *2 (N.D. Ill. Nov. 13, 1990) (stating that a complaint was not subject to dismissal merely because it did not plead the elements that must be proved to pierce the corporate veil under Illinois law); *cf. U.S. v. All Meat and Poultry*, 470 F. Supp. 2d 823, 832 (N.D. Ill. 2007) ("Non-fraudulent bases for piercing the corporate veil do not need to be alleged with specificity . . . .")  Indeed, this proposition is further supported by the fact that courts view piercing the corporate veil as an equitable remedy, applied only when failure to use it would promote injustice.  *Macaluso v. Jenkins*, 420 N.E.2d 251, 255 (1981).

Based on the above, the Court finds the FAC sets forth a plausible basis for liability based on piercing the corporate veil.  Although Defendants citation to *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992), is correct, it is unavailing.  *Poulos* found fraudulent joinder of a parent corporation under Wisconsin law, not Illinois law, and in *Poulos*, the 7th Circuit stated that at no time had the plaintiff attempted to "fill the gaps in his complaint."  *Id*. at 74.  Here, however, Plaintiff has attempted to provide factual support for her allegations via limited discovery conducted to date.  Defendants citation to other case law is similarly unsupportive—each of the cases dealt with the sufficiency of allegations at the motion to dismiss stage, and some courts provided leave to amend.  *See, e.g., First Place Bank v. Skyline Funding. Inc.*, No. 10 CV 2044, 2011 WL 824612, at * (N.D. Ill. Mar. 4, 2011) (granting motion to dismiss based on piercing the corporate

---

⁵ To determine whether a unity of interest and ownership exists, the court considers four factors: (1) failure to comply with corporate formalities or maintain adequate corporate records; (2) commingling of funds or assets; (3) undercapitalization; or (4) failure to maintain an arm's length relationship with related entities. *Van Dorn Co. v. Future Chem. and Oil Corp.*, 753 F.2d 565, 570 (7th Cir.1985).  Not all four factors must be plead to survive a motion to dismiss premised on piercing the corporate veil.

1  veil but providing leave to amend); *Onyango v. Downtown Entm't, LLC*, No. 11-CV-844-

2  5, 2012 WL 3133565, at *2 (N.D. Ill. July 30, 2012) *appeal dismissed*, 525 F. App'x 458

3  (7th Cir. 2013) (granting motion to dismiss because the plaintiff offered no factual

4  allegations to support his claims); *State ex rel. Higgins v. SourceGas*, LLC, No.

5  11C07193MMJCCLD, 2012 WL 1721783, at * 5 (Del. Super. May 15, 2012) (finding

6  the plaintiff failed to state a claim based on a piercing the corporate veil theory under

7  Delaware law because the court lacked jurisdiction to determine the issue and plaintiff

8  had failed to allege sufficient facts).

9        Therefore, although Defendants contend that WKUS does not actually participate

10  in the management of WK Health, none of the evidence submitted by Defendants is

11  sufficient to disprove these allegations. *See Riddle v. Merck & Co.*, Civil No.

12  06–172–GPM, 2006 WL 1064070, at *5 (S.D. Ill. Apr. 21, 2006) (stating that in ruling

13  on a motion to remand based on fraudulent joinder "the Court's task is to avoid retrying

14  a plaintiff's claims on the merits and to resolve all issues of fact in favor of remand.").

15  As a result, because Illinois courts do not require a plaintiff to plead each of the elements

16  that must ultimately be proved in order to allege liability based on piercing the corporate

17  veil, and Plaintiff has alleged that WKUS participates in the management of WK Health,

18  and subsequently bolstered these allegations with additional evidence (WKUS and WK

19  Health are both wholly owned subsidiaries of non-party Wolters Kluwer U.S. Corpora-

20  tion, WKUS enters into contracts on behalf of WK Health, and the two unties share the

21  same executive office), the Court finds Defendants have failed to show that there is no

22  possibility that Plaintiff can prevail against WKUS.[6] *See Valentine v. Ford Motor Co.*,

23  No. 2:03–CV–090–JDT–WGH, 2003 WL 23220758, at *4 (S.D. Ind. Nov. 21, 2003)

24  (explaining that "[t]he test for fraudulent joinder . . . is a less searching test than the test

25  under Rule 12(b)(6) [of the Federal Rules of Civil Procedure]. In fact, a federal court

26  may find that a nondiverse defendant is not fraudulently joined for the purposes of

27  jurisdiction, and later a state court may find that the plaintiff failed to state a claim

28

_____

[6] Doc. No. 39 at 20:4-21-5.

1  against the same nondiverse defendant, who will then be dismissed from the suit.")
2  (citations omitted).

3       Finding Plaintiff may potentially be able to state a claim against WKUS based on
4  the actions of WK Health, the Court now considers whether there is any possibility that
5  Plaintiff will be able to state a claim against WK Health.  *Poulos*, 959 F.2d at 73.
6  Defendants argue Plaintiff's claims fail because WK Health did not provide the PEMs at
7  issue to Decedent's pharmacy, nor does the FAC support Plaintiff's new allegations that
8  WKUS voluntarily undertook (or assumed) a duty to exercise due care in issuing
9  warnings to Decedent's physicians.[7]  Plaintiff did not respond to either contention in her
10  reply; however, it is unclear whether this omission was purposeful or inadvertent.

11       Assuming the mistake was inadvertent (in light of Plaintiff's opposition to the WK
12  Defendants' motions to dismiss), the Court finds Plaintiff has stated a plausible claim
13  against the WK Defendants based on WK Health's alleged voluntary undertaking to
14  provide up-to-date and comprehensive information regarding Januvia to Decedent's
15  physician, and that neither the learned intermediary doctrine, nor federal preemption bars
16  Plaintiff's claims.[8]  First, although the parties dispute the extent of the information
17  provided to Decedent's physician, or whether such information was provided at all, in
18  the fraudulent joinder context, the court must resolve all questions of law and fact in
19  favor of the plaintiff.  *See Whelchel*, 850 F. Supp. 2d at 931.  Moreover, to the extent
20  Plaintiff alleges that the WK Defendants voluntarily provided insufficient information
21  regarding Januvia to Decedent's physician(s), the learned intermediary doctrine would
22  be inapplicable, and any determination over the scope of the duty would be inappropriate
23  at this juncture.  *See Kasin v. Osco Drug, Inc.*, 728 N.E 2d 77, 80 (Ill. Ct. App. 2000)

24

25      [7] In Defendants' notice of removal they also argued that Plaintiff's claims were barred by the
26  learned intermediary doctrine and preemption under *PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567 (2011).
   Neither of these contentions were advanced in Defendants' opposition to the motion to remand.

27      [8] Plaintiff has conceded that the PEMs at issue were not provided to Decedent's pharmacy.
28  Defendants' opposition to Plaintiff's motion to remand did not argue Plaintiff's claims were barred
   under the learned intermediary doctrine or federal preemption.  (Doc. No. 53.)  These arguments were
   addressed in Merck's notice of removal.

14cv360 AJB (MDD)

("We believe the Frye opinion implies that the learned intermediary doctrine does not apply once a pharmacist voluntarily undertakes to warn a consumer of a drug's dangerous propensities.").[9]  Finally, federal preemption under *PLIVA*, *Inc. v. Mensing*, 131 S. Ct. 2567, 2574 (2011) is inapplicable here.  *PLIVA* held that a generic manufacturer could not be liable for failing to use a different label from, or in addition to, the label provided by the brand manufacturer.  Here, because Plaintiff has alleged that the WK Defendants voluntarily provided additional information to Decedent's physicians, that such information was independent of the label, and that such additional information was inadequate, Plaintiff's claims are not clearly preempted.

Therefore, although Defendants have proffered potentially valid reasons as to why Plaintiff's claim may ultimately be unsuccessful against the WK Defendants, at this stage in the proceedings, coupled with the heavy burden Defendants must shoulder to prove that the WK Defendants were fraudulently joined, the Court does not find Plaintiff has no possibility of succeeding against the WK Defendants in Illinois state court.  *Bavone*, No. 06–153–GPM, 2006 WL 1096280, at *2.  Accordingly, remand is required based on the inclusion of WKUS.

**B.    Defendants HD Smith and Smith Medical ("Smith Defendants")**

Defendants argue the Smith Defendants were fraudulently joined because: (1) neither Defendant distributed the Januvia ingested by Decedent to Decedent's pharmacy; (2) Plaintiff's theory that the Smith Defendants distributed Januvia to an unknown third-party, who then distributed the drug to Decedent's pharmacy, is unsupported by any actual evidence; (3) the Smith Defendants did not market or promote Januvia; and (4) the Illinois Distributor Statute bars Plaintiff's claims.[10]  In response, Plaintiff contends that

---

[9] Under Illinois law, to claim the protection of the learned intermediary doctrine, a defendant must be able to show that physicians received adequate warning of the known dangerous propensities of a prescription drug.  *Proctor v. Davis*, 682 N.E.2d 1203, 1215 (Ill. 1997).  The "adequacy of warnings is a question of fact, not law, for the jury to determine."  *Id.*

[10] Each cause of action in the First Amended Complaint is alleged against the Smith Defendants, including: (1) strict liability-failure to warn; (2) strict liability- design defect; (3) negligence; (4) implied warranty; (5) express warranty; (6) wrongful death; and (7) survival.  Both Merck and the Smith

1   all participants in the chain of distribution are liable for injuries caused by a defective

2   product under Illinois law.  Moreover, Plaintiff asserts Defendants have failed to present

3   conclusive evidence they are not within the "chain of distribution."

4          In determining the issue of fraudulent joinder, this Court is allowed to "pierce the

5   pleadings" and conduct a summary inquiry. *Hill*, 2007 WL 1431865, at *4.  Based on the

6   evidence submitted by Smith Defendants in the form of their supplemental briefing (Doc.

7   Nos. 65; 66), this Court would find that Smith Defendants are not within the "chain of

8   distribution" that ultimately ended with Decedent's pharmacy.[11]  Though the Court

9   would find Smith Defendants to have been fraudulently joined, because we cannot

10  declare that WKUS was fraudulently joined, this Court GRANTS Plaintiff's motion to

11  remand.[12] *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 98 S. Ct. 2396 (1978)

12  (noting 28 U.S.C. § 1332(a)(1) which confers federal jurisdiction over cases involving

13  diverse citizens requires complete diversity, that is "diversity jurisdiction does not exist

14  unless each defendant is a citizen of a different State from each plaintiff").  However,

15  this ruling is not intended to be an indication of Plaintiff's probability of success in

16  Illinois state court.  *See Valentine v. Ford Motor Co.*, No. 2:03–CV–090–JDT–WGH,

17  2003 WL 23220758, at *4 (S.D. Ind. Nov. 21, 2003) (explaining that "[t]he test for

18  fraudulent joinder ... is a less searching test than the test under Rule 12(b)(6) [of the

19  Federal Rules of Civil Procedure].  In fact, a federal court may find that a nondiverse

20  defendant is not fraudulently joined for the purposes of jurisdiction, and later a state

21

22

23

24

25  Defendants filed oppositions to Plaintiff's motion to remand.  (Doc. Nos. 46, 53.)

26      [11] On June 9, 2014, Smith Defendants filed a motion to supplement in order to notify the Court of
27  recently discovered evidence in response to subpoenas issued to Jewel-Osco Pharmacy, the pharmacy
    that dispensed Januvia to Decedent.  (Doc. No. 65.)  The Court GRANTS that motion to supplement.

28      [12] Because the Court finds remand necessary, the Court does not address Plaintiff's contentions
    that the removal was procedurally defective.

14cv360 AJB (MDD)

1  court may find that the plaintiff failed to state a claim against the same nondiverse

2  defendant, who will then be dismissed from the suit.") (citations omitted).[13]

3  **C.   Motions to Dismiss**

4      Because this Court lacks jurisdiction to analyze the merits of WKUS and WK

5  Healthy's separately filed motions to dismiss, both motions are DENIED as moot.

6  **III.   CONCLUSION**

7      For the foregoing reasons, the Court (1) GRANTS Plaintiff's motion to remand,

8  (Doc. No. 39) and (2) DENIES as moot the motions to dismiss, (Doc. Nos. 47; 50).

9  IT IS SO ORDERED.

10

11  DATED:  June 17, 2014

12                                   _____

13                              Hon. Anthony J. Battaglia
                               U.S. District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28      [13] The Court does not address Defendants remaining arguments because they were presented by
   Plaintiff as an alternative to liability as a distributor.